UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATRYNNA L. DAVIS,

               Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

               Defendant.

Case No. C11-845-MJP-BAT

**REPORT AND RECOMMENDATION**

Katrynna Lynn Davis seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ: (1) did not conduct an impartial hearing; (2) incorrectly assessed the medical evidence; (3) ignored her GAF scores; (4) improperly failed to find she met a listing at step three; (5) incorrectly assessed her residual functional capacity; (6) posed a hypothetical question to the vocational expert that failed to include all of her limitations; (7) improperly discounted her credibility; and (8) improperly failed to consider lay evidence. Dkt. 18 at 11-22. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

REPORT AND RECOMMENDATION - 1

## FACTUAL AND PROCEDURAL HISTORY

Ms. Davis is currently 38 years old, has a GED, and has worked as a farm worker.[1] On April 10, 2007, she applied for benefits, alleging disability as of December 31, 2005.[2] Her applications were denied initially and on reconsideration.[3] After conducting a hearing, the ALJ issued a decision on April 21, 2010, granting a partially favorable decision awarding benefits with an onset date of February 1, 2009.[4] On May 17, 2010, the ALJ amended finding 1 of the decision to indicate Ms. Davis did not meet the insured status requirement for a period of disability and disability insurance benefits as of the established onset date of February 1, 2009; the ALJ also amended finding 15 to indicate Ms. Davis was not under disability at any time through March 31, 2006, the date last insured and was thus not entitled to a period of disability and disability insurance benefits.[5] As the Appeals Council denied Ms. Davis's request for review, the ALJ's decision is the Commissioner's final decision.[6]

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[7] the ALJ found:

**Step one:** Ms. Davis had not worked since December 31, 2005. She met the insured status requirement of the Social Security Act through March 31, 2006 but did not meet the insured status requirement for a period of disability and disability insurance benefits as of February 1, 2009.

**Step two:** Ms. Davis had the following severe impairments: depression, post traumatic stress disorder, migraine headaches, degenerative disc disease of the lumbar spine, and a history of substance abuse.

**Step three:** These impairments did not meet or equal the requirements of a listed

---

[1] Tr. 47, 188, 217.
[2] Tr. 188, 195.
[3] Tr. 109, 113, 117, 119.
[4] Tr. 19-35.
[5] Tr. 13, 18.
[6] Tr. 1-7.
[7] 20 C.F.R. §§ 404.1520, 416.920.

impairment.[8]

**Residual Functional Capacity:** Before February 1, 2009, Ms. Davis could perform light work. She could get along with others, understand simple instructions, concentrate and perform simple tasks, respond and adapt to workplace changes and supervision but in a limited public/employee setting.

**Step four:** Ms. Davis had no past relevant work.

**Step five:** There are jobs Ms. Davis could perform before she became disabled on February 1, 2009. After that date, there are no jobs Ms. Davis could perform.[9]

## DISCUSSION

**A.     Impartial hearing**

Counsel's claim that Ms. Davis was denied an impartial hearing is frivolous. As proof, counsel argues the ALJ's decision reported "Ari Halpern" was Ms. Davis's lawyer when "Elie Halpern" represented Ms. Davis. Ari Halpern and Elie Halpern are lawyers who have worked on Ms. Davis's case (Tr. 187), and the hearing transcript lists Ari as Ms. Davis's lawyer. Tr. 41. That the hearing transcriber and ALJ mistakenly misheard Elie as Ari shows a mistake was made, not that the hearing was unfair. Counsel also opines the ALJ put Ms. Davis "on trial," appeared to have decided the case from the beginning of the hearing, and erroneously evaluated the medical evidence. Dkt. 18. While counsel is entitled to have opinions, counsel's opinions, alone, are insufficient to prove the claim. Otherwise, this Court would be required to reverse the Commissioner whenever a claimant's lawyer opined the claimant was denied a fair hearing.

**B.     Assessment of the medical evidence**

Ms. Davis contends the ALJ erred in assessing the opinions of reviewing doctor Charles Slater, Ph.D., and examining doctors Terilee Wingate, Ph.D., and Janis Lewis, Ph.D. Dkt. 18 at

---

[8] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[9] Tr. 17-34.

15-17.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

*1. Dr. Wingate*

Examining psychologist Terilee Wingate, Ph.D., evaluated Ms. Davis for the Department of Social and Health Services ("DSHS") on January 24, 2007. Tr. 263. Dr. Wingate diagnosed Ms. Davis with Post Traumatic Stress Disorder ("PTSD"), Major Depressive Disorder, recurrent, moderate; and Borderline Personality traits. Tr. 264. In addition, Dr. Wingate conducted a Mental Status Examination ("MSE"), and administered the Beck Anxiety Inventory ("BAI"), and the Beck Depression Inventory II ("BDI"). Tr. 268-72. The doctor assessed a Global Assessment of Functioning ("GAF") score of 50.[10]

---

[10] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's

REPORT AND RECOMMENDATION - 4

1      Dr. Wingate opined Ms. Lewis had mild to moderate cognitive limitations and moderate

2  to marked social functional limitations. Tr. 265. The doctor also noted Ms. Davis just started

3  mental health treatment at BHR and "with consistent, intensive TX she may be able to work."

4  Tr. 266. The ALJ gave Dr. Wingate's opinions "slight weight" for two reasons. Tr. 30.

5      The ALJ first found "[a]lthough certain aspects of the assessment of Dr. Wingate are

6  consistent with the residual functional capacity conclusion rendered prior to February 9, 2009,

7  the undersigned notes there is no objective evidence to support marked limitation in the

8  claimant's ability to respond appropriately to and tolerate the pressures and expectations of a

9  normal work setting." Tr. 30. The record does not support this finding. The "objective medical

10 evidence" the ALJ relied on in discounting Dr. Wingate's opinion was the doctor's finding that

11 Ms. Davis could perform serial 3's and 7's, complete a 3-step task, recall 4 out of 4 words

12 immediately and 3 out of 4 words after a five minute delay. Tr. 30. But these findings pertained

13 to the doctor's assessment Ms. Davis had mild to moderate cognitive limitations, and not to the

14 doctor's assessment that Ms. Davis had moderate to marked social limitations. Tr. 265.

15     Moreover, objective medical evidence of the limitations caused by mental illness may

16 consist of the diagnoses and observations of professionals trained in the field of psychology. *See*

---

judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed. 2000). GAF uses a 10–point symptom range scale. A GAF score of 51–60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id*. at 34. A GAF score of 41–50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. A GAF score of 31–40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21–30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." A GAF score of 11–20 indicates "[s]ome danger of hurting self or others," or occasionally failing to "maintain minimal personal hygiene," or "gross impairment in communication." *Id*.

*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion based on clinical observations supporting psychiatric diagnosis is competent evidence); *Sanchez v. Apfel*, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000). A review of Dr. Wingate's evaluation clearly shows she relied on her clinical observations in reaching her conclusions.

In addition, the performance of a mental status examination on its own may be a proper basis upon which to form a medical diagnosis. *See Clester v. Apfel*, 70 F. Supp. 2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury."). Here, Dr. Wingate rendered opinions not just after diagnosing and observing Ms. Davis, but after performing a mental status examination and administering two standardized screening assessments. The record thus amply establishes Dr. Wingate's opinions were supported by objective medical evidence, and that the ALJ erred in finding otherwise.

The ALJ next found the assessment should be given little weight because it "was completed by the claimant's treating physician in an attempt to assist the claimant with obtaining assistance from the Department of Social and Health Services." Tr. 30. There is no evidence Dr. Wingate was Ms. Davis's treating doctor, that Dr. Wingate was chosen by Ms. Davis to perform the DSHS examination, or that Dr. Wingate was biased in any way. There is thus nothing to support to the Commissioner's argument that the ALJ properly discounted Dr. Wingate's opinions because the doctor had "agreed to become an advocate" for Ms. Davis. Dkt. 19 at 9.

Absent a clear showing of bias, the purpose for which medical reports are obtained is not a legitimate basis for rejecting them. An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the

Commissioner. *Ratto v. Secretary*, 839 F. Supp. 1415, 1426 (D. Or. 1993). Accordingly, the Court concludes the ALJ erred in giving "only some slight weight" to Dr. Wingate's opinions.

   *2. Dr. Lewis*

Examining psychologist Janis Lewis, Ph.D., evaluated Ms. Davis in March 2010 and opined that since January 2006, Ms. Davis could not "persist through a full-time work week," get herself to and from work alone, "cooperate with coworkers and use independent judgment for some work situations." Tr. 32, 589. Ms. Davis contends the ALJ erred in finding "while Dr. Lewis expressed that the onset of this limitation began in January 1, 2006, the objective medical evidence fails to support this assessment prior to February 1, 2009." Tr. 32. In specific, Ms. Davis argues the ALJ erred because the opinions of Dr. Wingate and Dr. Slater and Ms. Davis's GAF scores are objective medical evidence that support Dr. Lewis's opinion Ms. Davis was disabled beginning January 2006.

   The ALJ did not err, even if the Court were to assume the opinions of Dr. Wingate and Dr. Slater and the GAF scores support Ms. Davis's argument. This is because, as the ALJ found, there was other medical evidence showing Ms. Davis's disabling mental limitations had an onset date of February 2009. The ALJ reviewed Ms. Davis's Behavior Health Resources (BHR) mental health treatment records and found before February 2009, Ms. Davis's mental symptoms were deemed to be stable and under good control. Tr. 32. For instance, the treatment record of September 11, 2007, stated "[a]t this time, I do believe Katrynna is functioning quite well." Tr. 380. The treatment record of September 26, 2008, noted post traumatic stress disorder symptoms continue, mood is stable, depression addressed, nightmares are a problem. Tr. 487.

   An ALJ may give less weight to an opinion that is inconsistent with other evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ is

also entitled to resolve conflicts in the medical evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ, as he was entitled to, did exactly that. Ms. Davis disagrees and her argument the ALJ should have favored the opinions of Dr. Wingate and Dr. Slater and the GAF scores is based on a rational interpretation of the evidence, but so is the ALJ's finding the other way. In a case such as this where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ also found there was no evidence Dr. Lewis reviewed the entire medical record in rendering the opinion that Ms. Davis's onset date was January 2006. Whether this finding is erroneous need not be decided because as discussed above, the ALJ provided a valid reason to reject Dr. Lewis' opinion of an onset date of January 2006. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Accordingly, the Court will not disturb the ALJ's evaluation of Dr. Lewis's opinion.

*3. Dr. Slater*

Ms. Davis called reviewing psychologist Charles Slater, Ph.D., to testify at the hearing before the ALJ. Tr. 88. Dr. Slater's testimony was not wholly consistent. On one hand, he opined Ms. Davis was disabled since December 2005 based on his review of her medical record and the testimony Ms. Davis gave at the hearing. Tr. 90-93. On the other hand, he agreed with the ALJ that before 2007, Ms. Davis received no treatment for mental health problems, had not been diagnosed with any mental disorder, and that there was no objective medical evidence supporting an onset date of December 31, 2005. Tr. 94-95. Dr. Slater also agreed with the ALJ's assessment that Ms. Davis's mental health problems really "started going south" around February 2009. Tr. 95.

1   Ms. Davis contends the ALJ erred because the GAF scores contained in the medical
2   record and the opinions of doctors Wingate and Lewis support Dr. Slater's opinion that Ms.
3   Davis was disabled since the 2005 onset date. Dkt. 22 at 6. However, as discussed above, even
4   if the Court were to assume the opinions of the doctors and the GAF scores support Ms. Davis's
5   argument, the ALJ did not err in discounting Dr. Slater's opinions because Ms. Davis's BHR
6   mental health treatment records support the ALJ's finding. The ALJ is entitled to resolve
7   conflicts in the medical record. Faced with a record that may be susceptible to more than one
8   rational interpretation, the Court is required to uphold the Commissioner's conclusion and
9   therefore will not disturb the ALJ's assessment of Dr. Slater's opinions.

**C.  GAF scores**

11  Ms. Davis claims the ALJ erred by "ignoring/overlooking plaintiff's GAF scores of 45 in
12  November 2006 and February 2007, not even commenting on the disabling scores." Dkt. 18 at
13  14. The ALJ's decision plainly shows otherwise. The ALJ's decision states "[a]lthough the
14  claimant was given a Global Assessment of Functioning (GAF) of 45 . . . it was stated that the
15  claimant's employability should be looked at in the future when 'she gets some assistance with
16  childcare and funding from DVR.' This suggests that the evaluating physician was not of the
17  opinion that the claimant was precluded from work activity if she had assistance with childcare."
18  Tr. 29. In making this finding, the ALJ referred to the GAF scores Ms. Davis claims the ALJ
19  ignored and failed to comment on. *Id*. (referring to Ex. 3F at 11 and 23). Thus, contrary to Ms.
20  Davis's claim, the ALJ addressed the GAF scores and also properly explained why he was
21  discounting them. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Accordingly,
22  the ALJ's treatment of the 2006 and 2007 GAF scores was not erroneous.

### D. Step three errors

Ms. Davis argues the ALJ erred at step three in failing to find Ms. Davis met the requirements of a Listing for affective and anxiety disorders. Dkt. 18 at 20. The argument is based on the contention the ALJ erred in rejecting the opinions of Dr. Lewis and Dr. Slater. However, as discussed above, because the ALJ did not err in discounting the opinions of these doctors, Ms. Davis's step three argument is foreclosed.

### E. Ms. Davis's credibility

Ms. Davis argues the ALJ erred in finding her not fully credible. Dkt. 18 at 17. As the ALJ did not find Ms. Davis was malingering, the ALJ was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Ms. Davis claims "[n]owhere in the decision does ALJ Suttles ever give specific reasons why Plaintiff's testimony was not credible for the period prior to February 1, 2009." Dkt. 18 at 17. The ALJ's decision plainly shows this contention lacks merit. The ALJ found "in terms of the claimant's alleged disabling mental condition, the objective medical evidence fails to support the allegations of the claimant prior to February 1, 2009, to the extent that she was precluded from all work activity." Tr. 29. The ALJ then discussed the specific medical evidence that supported this finding. The ALJ found in January 2006, Ms. Davis "presented to Sea Mar Community Health Centers to establish treatment." *Id.* Ms. Davis reported being diagnosed with PTSD but "expressed she had never been on any medication for this condition." *Id.* A

follow-up in February 2006 showed no increase in symptoms. Sea Mars records indicated that throughout 2006 and 2007, Ms. Davis was cognitively intact, in terms of memory, concentration and intellectual functioning. *Id.* The ALJ also discussed, as noted above, that Ms. Davis was assessed a GAF of 45 in 2006 and 2007 but discounted those scores based on the evaluator's comments that indicated Ms. Davis was not precluded from work. *Id.*

The ALJ found that "in a progress note dated September 11, 2007, it was expressed that the claimant was functioning quite well and was getting along with family members," and that "in a subsequent progress note dated December 11, 2007, it was expressed that psychiatrically, the claimant was 'quite stable.'" *Id.* The ALJ further found "[w]hen seen on July 31, 2008, the claimant reported improvement in her depressive symptoms with Wellbutrin. She expressed only some difficulty with flashbacks, nightmares and panic attacks. It was stated that the claimant's depression was under 'good control.' On September 26, 2008, it was again stated that the claimant's depressive symptoms were stable." *Id.*

The ALJ's reliance on the inconsistency between Ms. Davis's testimony and her mental health treatment records concerning the nature or severity of the symptoms of which she complained is a proper and ordinary technique of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Accordingly, the Court will not disturb the ALJ's credibility determination.

**F.     Lay testimony**

Ms. Davis argues the ALJ erred in failing to consider the lay testimony contained in letters submitted after the hearing the ALJ conducted. This argument assumes the ALJ received Jeannie Blackden's and Jimmie Siddens's letters, something the record does not clearly establish. At the hearing before the ALJ, Ms. Davis's lawyer indicated the record was complete. Tr. 45.

Ms. Davis contends the ALJ received both letters before issuing the amended decision. The record shows Ms. Blackden's letter was stamped received by Ms. Davis's lawyer sometime before April 20, 2010 (Tr. 239), and that Mr. Sidden's letter was fax stamped as transmitted by or to Ms. Davis's lawyer on May 10, 2010. Tr. 240. As the ALJ issued his decision on April 21, 2010, and amended it May 17, 2010, it is possible the ALJ received the letters before issuing the amended decision.

However, there is nothing in the record specifically documenting the ALJ received the letters by the dates Ms. Davis claims. There is a letter Ms. Davis faxed to the Appeals Council on May 7, 2010, stating "ALJ Suttles erred by failing to consider the lay statement that was submitted." Tr. 253. However, there is no documentation supporting this claim. Moreover, the May 7, 2010, letter references one lay statement rather than the two lay statements presented to this Court. The record also shows, as the Commissioner argues, that the ALJ's exhibit list (Tr. 38) did not include the letters indicating the ALJ did not have the letters when he issued the initial and amended opinions. Because the Court cannot say the ALJ received the lay letters before issuing the final decision and disregarded them, the Court cannot conclude the ALJ erred.

However, even if the ALJ did not receive the letters, the Appeals Council considered them in denying Ms. Davis's request for review. Tr. 1-6. When the Appeals Council considers what may be new evidence that is submitted after the ALJ's decision, a federal court considers "on appeal both the ALJ's decision and the additional material submitted to the Appeals Council." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). If the new evidence shows there is a "reasonable possibility" that it would change the outcome of the ALJ's determination, then remand is appropriate to allow the ALJ to consider the evidence. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

Ms. Davis argues as the lay testimony "supported the findings of Dr. Wingate, Dr. Lewis and Dr. Slater in terms of Plaintiff's mental functional limitations" the Court should either award benefits or remand the matter for a de novo hearing. Dkt. 22 at 10. The letters of the lay witnesses do not support this argument. Mr. Siddens states he has known Ms. Davis since 2008. He is thus not in a position to support Ms. Davis's arguments that she was disabled as of December 2005, as she alleged, instead of February 2009 as the ALJ found. Mr. Siddens's comments regarding Ms. Davis' poor memory and difficulty with concentration are also at odds with Dr. Wingate's opinion that Ms. Davis had mild memory limitations. Tr. 265.

Ms. Blackden states she has seen Ms. Davis one or two times a week since approximately 2005. Tr. 239. She states Ms. Davis is paranoid, does not like being out in public, gets irritated, distracted and stressed, has low self-esteem and a lot of anxiety. These general descriptions of Ms. Davis are consistent with the ALJ's finding that Ms. Davis's depression and PTSD are severe impairments for purposes of a step two finding but they do not establish, as Ms. Davis claims, that she is unable to perform any work. Accordingly, the Court finds there is no reasonable possibility the ALJ's determination would have been different based on the lay letters.

**G.     Residual functional capacity assessment**

Ms. Davis argues the ALJ's residual functional capacity assessment fails to include all of the limitations set forth by GAF scores, Dr. Wingate, Dr. Slater, and Dr. Lewis for the period prior to February 2009, and that this failure resulted in a hypothetical question to the vocation expert that failed to capture all of her limitations. Dkt. 22 at 10-11. As discussed above, the ALJ did not err in evaluating Ms. Davis's GAF scores or the opinions of Dr. Lewis and Dr. Slater, and thus Ms. Davis's arguments are foreclosed to the extent they rely on the ALJ's evaluation of

this evidence. However, as the ALJ erred in evaluating Dr. Wingate's opinions, the ALJ on remand must necessarily consider the impact of Dr. Wingate's opinions in evaluating Ms. Davis's residual functional capacity and what questions to pose to a vocational expert.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should reevaluate the opinions of Dr. Wingate and develop the medical record as the ALJ deems necessary; reassess Ms. Davis's residual functional capacity; and if necessary reassess steps four and five of the sequential evaluation process utilizing a vocational expert as deemed appropriate.

Objections, if any to this Report and Recommendation must be filed and served no later than **January 20, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **January 27, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 6th day of January, 2012.

BRIAN A. TSUCHIDA  
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14